on behalf of Mr. Romero. I'm going to please the court. Right before court, I was talking to Mr. Romero's mother and sister, who were in the audience, and I said, gee, I've been on this case six years, and I'm feeling exhausted. And, in fact, the entire petition has been the petition was not exhausted. What happened in this case, and there's so much confusion looking back six years as to where to file and what's timely and what's not, so I did the most practical thing. I filed in state court and in federal court at the same time. Which procedure did you follow, Rines or Kelly? At that point, it was Rines. I followed Rines. King v. Ryan hadn't come out yet, which is also a case where I was counsel on that case. So I did ask for staying in a bay under Rines because Rines had just come out, and so a pace had come out. So that was really, in my opinion, that was a controlling case. And we did exactly what the court said. We filed a protective petition in federal court, and we asked for stay in a bay. In terms of time, it took the district court eight months to deny the stay in a bay. In that interim, we were both decided we didn't get just one opinion on the merits. We got two, one from the Superior Court and also one from the Court of Appeal. So there was no issue. The question was, in this case, the district court made a mistake because the district court thought that somehow we needed to amend the existing petition in federal court, which we really didn't because why not? There was nothing to amend. We had a fully exhausted petition. No, but it only became exhausted after the statute passed. Pardon me? It only became exhausted after the statute of limitations had run. You filed within one day of the statute. You only had 24 hours. Well, there was nothing to do with the federal petition because none of the issues had been dismissed. I'm sorry. There was nothing to do. We had a fully intact federal petition at the time the state exhausted the, by the time the California Supreme Court ruled on the case. Well, yes, but the way to solve that problem was to have amended within the time limit. But there's nothing to amend. Amended to say what? What was there to amend? All of the issues were there. They hadn't been dismissed. They were full. There's nothing to amend. I would have had to file the exact same petition in federal court that was currently pending. So there's nothing to amend. Oh, but look, the Rines procedure was denied. Let us suppose properly. Yeah, the Rines procedure. Well, that's the next issue that this court wanted us to brief. Well, no, but let's suppose that the district court got it right and that no clause was shown. Okay. What, what have you got? Well, well, well, then, then, then, then this court is focusing on when I should have notified the, the district court. What makes this even more confusing is there was a direct order from the magistrate giving me until June, I believe it was June 6th, to tell them what the status was, whether it had been exhausted. So that was really confusing. That, that, assuming I had a certain amount of time to advise the court that all of these issues had been exhausted, when, when the magistrate submitted her notice saying, okay, you know, are they exhausted or aren't they? And, and I'm going to give you a certain amount of time to tell us. At that point wasn't the question whether those unexhausted claims that were now exhausted were laid back. No, no, they, they, it wasn't because this, it was a timely filed petition. There was nothing to relate back. They were never dismissed. They weren't amended. They weren't added. In other words, if the court, I would, I would agree with the court, I would agree that, that issues would have been dismissed if the state court hadn't been filed, if the state court petition hadn't been filed on time. But it was exhausted in time, at the right time. And when you look at King v. Ryan, those were exhausted like two hours before the court issued its ruling. So exhaustion has nothing to do with notification. And, and in fact, when I prepared the timeline for the briefs, I think this court can see that everything was done in a timely fashion. I would like to save some time for rebuttal, but I think it's important. There is a distinction. I would say that if the, if the district court, upon denying the stay and obey, had dismissed the issues, then I would have had to file an amended petition within the one day, within the one day that was left under the statute. In this case, we didn't need to do it for two reasons. Number one, the claims had never been dismissed. They were still, there was still one intact petition before the court. And number two, there was an order by the, by the magistrate giving me, saying, okay, what's the status? Let us know by such and such a date, which is exactly what we did. So I think that that added a wrinkle when the court said, gave us a certain amount of time. So I would like to save time for rebuttal, but I'd like to hear from the court, if the court has any other questions or issues. All right, we'll hear from the other side, and then you can have three and a half minutes to answer. Good morning, and may it please the court. Charles Ragland, Deputy Attorney General for Respondent, Kelly Harrington. I'll begin with Judge Trott's question, and that was what procedure was followed here, Kelly or Rines? And I would say neither procedure was followed at the outset. The petitioner with counsel filed a mixed petition in the district court, did not request a stay at that time, didn't offer any factual support that would establish good cause. The district court sent the petitioner's counsel a notice informing her that she had filed a mixed petition that was subject to dismissal and gave her four options. The petitioner's counsel filed a notice saying, we'll take the stay in the bay. The district court then had to, again, contact counsel and say, that wasn't one of the options, simply accepting a stay in the bay. You have to actually file a supported motion establishing good cause for a stay in the bay under Rines. Then the petitioner's counsel submitted it and determined that good cause was not established in that case. So under Rines, the motion for good cause was denied, therefore she was not entitled to a stay in the bay at that time. Once a court finds there is not good cause for a stay in the bay under Rines, there are only two options. One is to dismiss the mixed petition outright, and the second, and this was suggested in Rines, is to allow the petitioner to delete the unexhausted claims and proceed on the exhausted claims. That option was given to petitioner's counsel here. She refers to the other options that were given. One was to demonstrate exhaustion. The court noted that as it appears, there are five claims that appear to be unexhausted. If the petitioner could show that they were exhausted, that was one option. The other option was to dismiss the entire petition. The other option was to delete the unexhausted claims and proceed on the exhausted claims. The district court did not ever suggest to the petitioner that if they demonstrated exhaustion after the denial of the good cause, that those claims would be deemed timely. That wasn't promised at all. The June 30th date was simply a pleading date that was given for the parties on each one of the options that were available. So after all this is said and done, where did that leave the status of this case? It seems it was just hanging there. Right. The only viable option at the time that the motion for stay in abeyance was denied was to delete the unexhausted claims and proceed with the exhausted claims. But nothing happened. Nothing happened. That option was given to petitioner's counsel, but petitioner's counsel simply filed the declaration stating, all of my claims are exhausted now. So then finally they become exhausted. Right. And they file a notice of exhaustion. Right. And the question is, were they required to move to amend or not at that point? Well, yes. They could have moved to... And her position is, amend what? Because nothing had happened. There it was still there with all the claims, both now exhausted and unexhausted. How would you have filed the amendment to something that hadn't been altered? I would have moved to... See, that's the wrinkle. Nothing had happened to it. It was still sort of hanging there. Well, something did have to happen to it. The unexhausted claims that... the claims that were unexhausted at the time the petition was filed, those had to be removed from the petition.  Right. The Proctor Court ultimately had to move forward... And her question is, amend what? Because it was still there intact as I originally filed it. Nobody ever got around to dismissing it or doing anything to it. There was a lot of chatter and a lot of talk, but nobody did anything to it. So what was I supposed to amend? That's her question. Your answer is? The... I mean, isn't it form over substance to amend at that point? That's what she's arguing. What had to happen... the problem was, what was before the court was a mixed petition. So, one thing... only two things can happen. Either the entire petition is dismissed, or the unexhausted claims are dismissed from the petition. The district court tried to get the petitioner to do that on two occasions, but the petitioner didn't do it. And that's the point. The district court didn't dismiss it either. Am I right? Well, the district court ultimately did dismiss the unexhausted claims. But not... eventually. But not at the point where the notice of exhaustion was filed. Right. The district court eventually did it, but... But what I'm getting at is what... I'm just asking her question, looking for your answer. What was she required to do in terms of an amendment, given the fact that nothing had happened to the complaint there it was? The problem was, the petition needed to be amended. How? I mean, there it was. By removing the unexhausted claims. But they're exhausted by the time that the notice of motion... notice of exhaustion comes in. Right. But that wasn't... that doesn't do anything to the petition. The petition itself had to be... But it was. But it wasn't. Right. Petitioner's counsel didn't do that, so the district court had to do it for petitioner. And that was remove the unexhausted claims by dismissing them. When did that happen? That happened... Was that after the notice of exhaustion? Correct. But the... whether the unexhausted claims were timely at that point is a separate question. And that's... that was the basis... Yeah, what I'm... I don't know, I'm missing something because all I'm doing is asking her question. What was I required to do? How was I supposed to amend if nothing had been changed and there was nothing to be added? The claims were now there. Well, if she had done nothing, the entire petition was subject to dismissal. But it wasn't dismissed. Right. The district court gave her the option of removing the unexhausted claims. She still didn't take that option, so then the district court ultimately had to dismiss the unexhausted claims so that the exhausted claims could receive review. So how would the motion to amend read if you had been doing it? Petitioner moved to delete claims 1, 2, 3, 9, and 11 from the petition. This is after they were exhausted? Well, the notice came out before they were exhausted. The notice of exhaustion was filed after the order giving the options was put out. When the... when the district court denied the motion for stay in advance and then issued the order basically giving the petitioner three options, but the only viable one really at that point was to dismiss the unexhausted claims, at that point those claims were not exhausted. The petitioner waited until the claims were exhausted and then filed a notice that said the claims are exhausted now. But that came after the district court gave the order. I know, but the claims are still there. I'm not getting this. The claims are still there in the complaint. They had never been dismissed. Right. So... Are you referring to all the claims or the unexhausted claims? The ones that you say should have been subject to the motion to amend. The... right, those are the unexhausted claims. Right. But the problem is with a mixed petition is that the entire petition is subject to dismissal. Subject to, but it wasn't. Right. The court... You know, I'm just not... we're not talking to each other. You say she should have amended and she says how, what, why? It's still there. Whether it should have been, would have been, could have been or whatever it was, it wasn't. So amend what if it's already there? Amend the petition by deleting the unexhausted claims. They weren't exhausted at that point. They were not exhausted at the time that the district court... And then they were exhausted when she came in with a notice that was still hanging there. That's right. But it doesn't... Okay. I'm sorry. I'm just not getting it. Not getting your answer. The unexhausted claims had to be removed from the petition or dismissed. She should have moved to remove the unexhausted claims that were now exhausted and then move to amend it by putting them back in. Let me ask the question somewhat differently. Yeah. What time counts? Please repeat that, Your Honor. Yeah. When... what counts so far as the exhaustion is concerned? Is it when the petition is filed? Is it when the district court rules or rules on what? What counts is whether... at the time that the petition is filed. And that's relevant in this case because the petitioner waited so close to the end of the limitations period that the only way it was going to be timely was on that day. Right. And that's the day that it has to be viewed and on that day it was unexhausted. So it doesn't make any difference if a district court takes 10 years or 10 hours to rule. Correct. That's what... that's the state of affairs on which it is ruling. That's correct, Your Honor. So the fact that it was ultimately exhausted, as any claim would be, eventually it will be exhausted in state court, you don't use that time to say, well, the case hasn't been resolved yet, it's exhausted now. You go by the time that it was filed because that's the timeliness determination. So the motion to amend is just a red herring, an irrelevant red herring? In situations where the petitioner waits until the end of the limitations period, often the amending and returning to federal court is not a viable option. And the Supreme Court and this Court has recognized that before. Once you wait until the... near the end of the limitations period, the likelihood that you're going to be able to exhaust state remedies and return to the district court and amend your petition are very slim, nearly impossible. So this situation, it was problematic, but it was problematic because the petitioner waited until the last day of the limitations period before filing for state review. And didn't request a stay at that time. And did not request a stay at that time. And then eventually did not show good cause for a stay. The district court here recognized that because the petitioner waited until nearly the end of the limitations period, the only way that this petitioner was going to receive review of the unexhausted claims was by obtaining a stay in abeyance under RINES. And that required a showing of good cause. That wasn't made in this case, so this petitioner was simply out of luck as to those unexhausted claims. And in another case decided by this court, Robbins v. Carey, it was a somewhat similar situation where the court gave the petitioner, I believe, five days to amend their petition by deleting the unexhausted claims. The petitioner did nothing, and the district court simply dismissed the entire petition. And that decision was upheld by this court. The main holding in that case was that a district court is not required to consider a sua sponte, a stay, or to advise a petitioner that they can request a stay. And short of doing that in this case, the district court in this case gave the petitioner multiple opportunities to amend the petition by deleting the unexhausted claims. The petitioner never did that. The district court ultimately did that for the petitioner. But the district court here could have dismissed the entire petition. If there are no other questions from the court, we're prepared to submit the case. Thank you. Thank you, counsel. Thank you. I still don't think my question was answered as to what I was supposed to do. I think the prosecution is mixing things up because what we did was basically expedite. The prosecution is basically saying, look, you can't really file a mixed petition. Or if you file a mixed petition and the court denies Rines, you're out of luck. Because then you can't have any exhausted claims. I mean, I could have waited, assuming that Rines had granted my stay and obey. Okay, then I could have, which would have been eight months somewhere down the line, then I could have started in the California Supreme Court and taken another eight months to get it exhausted. But I didn't. So the procedure is expedited. This is an expedited procedure. And the fact that the court took as long as it did really wasn't any fault of my own. If the court had dismissed the claims, then there would have been other issues. But in this case, there was a fully exhausted pending petition before the court. And again, the respondent still hasn't answered the question. What was I supposed to file? What was I supposed to amend? There was nothing to amend, so we're asking the court to reverse the case. Thank you. Thank you, Counsel. Romero v. Harrington is ordered submitted.
judges: Beistline, Trott, Rymer